UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MICHAEL MATZELL,

     Plaintiff,

 -v-          9:20-CV-1605

JEFFREY MCKOY, BRUCE YELICH,
STANLEY BARTON, KAY HEADING-
SMITH, ELIZABETH LARAMAY, JANE
BOYEA, JOHN/JANE DOES 1-10,
ANTHONY ANNUCCI

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:     OF COUNSEL:

EMERY CELLI BRINCKERHOFF  KATHERINE ROSENFELD, ESQ.
ABADY WARD & MAAZEL, LLP  DEBRA L. GREENBERGER, ESQ.
Attorneys for Plaintiff     VIVAKE PRASAD, ESQ.
600 Fifth Avenue, 10th Floor
New York, NY 10020

HON. LETITIA JAMES
Attorney General for the    CHRIS LIBERATI-CONANT, ESQ.
 State of New York      Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On November 25, 2020, plaintiff Michael Matzell ("Matzell" or "plaintiff") filed this 42 U.S.C. § 1983 ("§ 1983") putative class action against defendants Jeffrey McKoy, Bruce Yelich, Stanley Barton, Trudylynn Boyea, Katherine Heading-Smith, Elizabeth Laramay, Anthony Annucci, and other unidentified New York State Department of Corrections and Community Supervision ("DOCCS") employees (together "defendants").  Plaintiff, a former inmate in New York state prison, alleges defendants' decision to administratively disqualify him from DOCCS' Shock Incarceration Program ("Shock") despite a sentencing judge's order that he enter the program violated his rights.

Matzell brings claims under § 1983 for violation of his rights under the Eighth and Fourteenth Amendments.  Defendants have moved for judgment on the pleadings under Federal Rule of Civil Procedure ("Rule") 12(c).  The motion having been fully briefed, the Court will now consider it on the basis of the parties' submissions without oral argument.

## II. BACKGROUND

### A. The Shock Incarceration Program

Shock is a six-month program in which inmates are subject to "a highly structured routine of discipline, intensive regimentation, exercise and work

2

therapy, together with substance abuse workshops, education, prerelease counseling, and self-improvement counseling." Dkt. 1 ("Compl."), ¶ 38 (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 1800.2).[1]  To be eligible for Shock, an inmate must be: (1) eligible for release (on parole or conditional release) within three years; (2) less than fifty years old; (3) free of any prior conviction for a violent felony offense; and (4) not currently serving a sentence for specified violent crimes.  *See id.* ¶ 48 (citing N.Y. CORR. LAW § 865(1)).  A Shock participant who successfully completes the program is eligible for immediate release on parole or conditional release.  *See* N.Y. CORR. LAW § 867(4); N.Y. EXEC. LAW § 259-i(2)(e); 7 N.Y.C.R.R. §§ 1800.2, 1800.4(c); 9 N.Y.C.R.R. § 8010.2.

Prior to 2009, DOCCS enjoyed broad discretion to admit or exclude individuals from Shock.  Compl. ¶ 39.  Indeed, until that point, only DOCCS could determine an inmate's Shock eligibility; judges had no authority to order that an inmate be placed in the program.  *Id.* ¶ 44.

However, in 2009, the New York State Legislature passed the Drug Law Reform Act of 2009, (L 2009, ch 56, as codified in CPL 440.46 "DLRA"), which allowed sentencing judges to offer court-mandated substance abuse treatment to certain non-violent offenders without the approval of

---

[1] The facts are taken entirely from plaintiff's complaint and any documents attached to it, because for the purposes of a Rule 12(c) motion, this court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.

prosecutors.  *Id.* ¶¶ 40-41.  Specifically, the DLRA amended Penal Law

§ 60.04(7) and enabled a sentencing court to "issue an order directing that

[DOCCS] enroll the defendant in the shock incarceration

program . . . provided that the defendant is an eligible inmate, as described in

[N.Y. CORR. LAW § 865(1)]."  *Id.* ¶¶ 42.

Since the DLRA's 2009 enactment, state prison officials may continue to

screen individuals who apply to Shock but may only reject inmates who have

been *judicially sentenced* to Shock when the prisoner has a "medical or

mental health condition" that would prevent him from successfully

completing the program.  Compl. ¶ 50.  Although the legislature reduced

DOCCS' role in screening inmates, it nevertheless clarified that "any

defendant to be enrolled [in the Shock] program pursuant to this subdivision

shall be governed by the same rules and regulations promulgated by

[DOCCS], including without limitation those rules and regulations

establishing requirements for completion and such rules and regulations

governing discipline and removal from the program."  *Id.* ¶ 48 (citing

N.Y. PENAL LAW § 60.04(7)).

The DLRA's changes to Shock were widely reported.  Members of the

media, public defender organizations, criminal justice groups, and other

stakeholders all discussed its impact.  Compl. ¶¶ 43, 47.  DOCCS itself even

issued an analysis explaining the statutory reforms, noting that "[t]he

DLR[A] also permits the sentencing court to order DOCCS to enroll a drug defendant into the Shock Incarceration Program when the defendant meets the legal requirements." *Id.* ¶ 46.

### B. Plaintiff's Sentencing and Time in DOCCS Custody

On July 9, 2015, the St. Lawrence County Court sentenced Matzell to four years' imprisonment, to be followed by three years of post-release supervision, for criminal possession of a controlled substance in the third degree. Compl. ¶ 65. Plaintiff was to serve this sentence consecutively to the thirty-seven-months of time remaining from a previous sentence. *Id.* ¶ 66. Put together, plaintiff's aggregate maximum term was set at seven years, one month, and 26 days. *Id.* The court also sentenced plaintiff to enroll in Shock under to Penal Law § 60.04(7), though he would not become time-eligible for the program until January 2018. *Id.*

On July 16, 2015, Matzell entered DOCCS custody to begin serving his sentence. Compl. ¶ 68. During his incarceration, plaintiff received several Tier 3 disciplinary tickets for substance-abuse-related infractions. *Id.* ¶ 71.

In January 2018, after serving two and a half years of his sentence, Matzell became time-eligible to enroll in Shock. Compl. ¶ 72. But when plaintiff applied, DOCCS denied him admission to the program based on his disciplinary tickets for substance abuse during his incarceration. *Id.* Specifically, as Matzell neared his Shock enrollment eligibility date, he

contacted defendants Boyea and Barton to inquire about his anticipated enrollment in Shock.  Compl. ¶ 76.  Both defendants denied plaintiff's admission to Shock based on his disciplinary tickets for substance abuse-related infractions.  *Id.* ¶¶ 77-83.  Around this time, defendants Smith and McKoy also wrote to plaintiff and informed him of his ineligibility for Shock on the same grounds.  *Id.* ¶¶ 82, 84-90.

On December 18, 2017, Matzell's counsel wrote to defendant Yelich and identified certain statutory grounds that he argued would require plaintiff's admission to Shock absent a disqualifying medical or mental health condition.  Compl. ¶ 89.  On February 15, 2018, defendant McKoy replied, informing plaintiff that he did not meet the disciplinary criteria to enter Shock.  *Id.*  At no point did defendants identify any medical or mental health conditions that prevented plaintiff from enrolling in the program.  *Id.* ¶¶ 85, 88, 93.

On May 8, 2018, after defendants excluded Matzell from Shock, he commenced an Article 78 proceeding[2] challenging DOCCS' determination that he was ineligible for the program.  Compl. ¶ 97.  On March 7, 2019, the New York State Supreme Court, Albany County, issued an Order and Judgment (the "March 7 Order") in favor of plaintiff, stating "the controlling

---

[2] An Article 78 proceeding is a special proceeding under New York law which allows a petitioner to challenge the legality of state actions.  *See* N.Y. CPLR § 7803.

statutes do not permit DOCCS to administratively bar an inmate from entering the [S]hock program when [S]hock has been judicially ordered. To do so constitutes an administrative alteration of a sentence, which is not permitted." *Id.* ¶ 98.

In the Article 78 proceeding, DOCCS argued that it retained discretion to bar judicially sentenced shock inmates from participating in the program. Compl. ¶ 99. DOCCS reasoned that Penal Law § 60.04(7)(a) refers to incarcerated persons who have yet to begin Shock, which allows DOCCS to apply its own rules and regulations to preclude those individuals from enrolling in Shock. *Id.* ¶ 99 n.9.

The March 7 Order rejected this interpretation of § 60.04(7)(a), stating that "[t]he full sentence [in this section] refers to any defendant who is 'to be enrolled' in shock because a court has already *ordered* DOCCS to do so." *Id.* (emphasis in original). Moreover, the March 7 Order stated that defendant Annucci was under a "clear statutory mandate" to enroll Matzell in Shock, and that "[n]othing in the statute permits DOCCS to defy a court order." *Id.* ¶ 100. Accordingly, the March 7 Order directed DOCCS to enroll plaintiff in Shock within 30 days. *Id.* ¶ 101.

DOCCS appealed the March 7 Order, which resulted in an automatic stay. Compl. ¶ 102. Matzell moved to vacate the automatic stay, and on May 31, 2019, the New York State Supreme Court Appellate Division, Third

Department, granted his motion.  *Id.* ¶ 102.  Ultimately, that court also

affirmed the March 7 Order.  *See In re Matzell v. Annucci*, 121 N.Y.S.3d 153

(Sup. Ct. App. Div. 3d Dep't 2020).

Following the March 7 Order and the Third Department's order vacating

the automatic stay, DOCCS officially determined that Matzell suffered from

no disqualifying "medical or mental condition."  Compl. ¶ 103.  On June 7,

2019, DOCCS allowed plaintiff to enroll in Shock, 506 days after he became

eligible for the program.  *Id.* ¶ 104.

On December 24, 2019, upon Matzell's completion of Shock, DOCCS

immediately and automatically granted him early conditional release; he was

released from DOCCS custody the same day.  Compl. ¶¶ 106-107.

## III. <u>LEGAL STANDARD</u>

Rule 12(c) provides that "after the pleadings are closed – but early enough

not to delay trial – a party may move for judgment on the pleadings."  FED. R.

CIV. P. 12(c).  "The standard for addressing a Rule 12(c) motion for judgment

on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for

failure to state a claim."  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d

Cir. 2006).

"When considering [a Rule 12(c) motion], a court must construe plaintiff's

complaint liberally, accepting all factual allegations in the complaint as true,

and drawing all reasonable inferences in the plaintiff's favor."  *Smith v.*

*Roberson*, 2016 WL 1056588, at *1 (N.D.N.Y. Mar. 16, 2016); *see also Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 767 (2d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Smith*, 2016 WL 1056588, at *1.

## IV. <u>DISCUSSION</u>

Matzell asserts two claims on behalf of himself and a putative class: (1) a claim alleging defendants denied his rights as guaranteed by § 1983 and the Fourteenth Amendment of the United States Constitution; and (2) a claim alleging that defendants imposed cruel and unusual punishment in violation of § 1983 and the Eighth Amendment of the United States Constitution.

Defendants argue for dismissal of Matzell's claims solely on the grounds that they are entitled to qualified immunity as a matter of law.

"Qualified immunity protects government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Moore v. Keller*, 2021 WL 4066541, at *5 (N.D.N.Y. Sep. 7, 2021) (citing *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020)). The qualified immunity analysis asks (1) whether the official violated a statutory or constitutional right; and (2) whether that right was "clearly established" at the time of the challenged conduct. *See Francis v. Fiacco*, 942 F.3d 126, 140 (2d Cir. 2019).

The Second Circuit has sometimes broken this test into three separate inquiries:  (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was "clearly established"; and (3) even if that right was "clearly established," whether it was still "objectively reasonable" for defendant to believe his conduct was lawful. *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).

To be clearly established for purposes of qualified immunity, "it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." *Vincent v. Yelich*, 718 F.3d 157, 169 (2d Cir. 2013) (citing *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000)).

Defendants do not appear to challenge plaintiff at the first step of the qualified immunity inquiry.  Instead, they argue it was not "clearly established" that DOCCS's application of pre-existing administrative exclusion criteria  violated an inmate's constitutional rights."

This argument is unpersuasive.  First, the New York statutes are clear that, although state prison officials may screen (and reject) individuals who *apply* to Shock, they may only screen *judicially sentenced* inmates for "medical or mental health condition[s]" that would prevent an inmate from completing the program.  *Compare* N.Y. CORR. LAW § 867(1)-(2) (permitting state prison officials to screen Shock applicants to assess whether

individual's participation would be "consistent with the safety of the community, the welfare of the applicant and the rules and regulations of the department"), *with id.* § 867(2-a) ("Subdivisions one and two of this section shall apply to a judicially sentenced shock incarceration inmate only to the extent that the screening committee may determine whether the inmate has a medical or mental health condition that will render the inmate unable to successfully complete [Shock]").[3]

Moreover, since at least 2006, the Second Circuit has stated that "[DOCCS] has no…power to alter a [judge's] sentence." *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006). For this principle, the *Earley* court looked back 70 years to *Hill v. United States ex rel. Wampler*, 298 U.S. 46 (1936), noting that in *Wampler*, "the Supreme Court established that the sentence imposed by the sentencing judge is controlling; it is this sentence that constitutes the court's judgment and authorizes the custody of a defendant." *Earley*, 451 F.3d at 74. In 2013 and 2016, the Second Circuit confirmed that, for the purposes of qualified immunity, *Earley* clearly established that

---

[3] As noted *supra* § II.B, the New York State Supreme Court, Albany County and the Third Department reached a similar conclusion. Both courts rejected DOCCS' argument that it could determine Shock enrollment for judicially sentenced inmates. *See* Dkt. No. 48, Ex. C, *Matzell v. Annucci*, No. 3111-18, at 6 (Sup. Ct. N.Y. Cnty., Mar. 7, 2019) ("[T]he Court finds that the controlling statutes do not permit DOCCS to administratively bar an inmate from entering the shock program when shock has been judicially ordered. To do so constitutes an administrative alteration of a sentence which is not permitted"); *see also Matzell*, 121 N.Y.S.3d at 157-58 ("DOCCS' interpretation would permit it to administratively modify a criminal sentence, rendering the Legislature's grant of judicial authority under the statute meaningless and hamper the purpose of the statute under the DLRA").

DOCCS does not have the power to alter a sentence.  *See Vincent*, 718 F.3d at 170; *Betances v. Fischer*, 837 F.3d 162, 171 (2d Cir. 2016).

The mere fact that no court has specifically extended *Earley's* rule to an administrative exclusion from Shock does not change the result.  Indeed, while the Supreme Court has held that "rights should not be defined at a high level of generality," *White v. Pauly*, 137 S. Ct. 548, 552 (2017), it reiterated recently that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question," *Taylor v. Riojas* 141 S. Ct. 52, 53-54 (2020) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  And as the Second Circuit noted in *Earley*, since at least 1936 (in *Wampler*), the Supreme Court has approved of the broad rule that "[t]he judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment." *Earley*, 451 F.3d at 75 (citing *Greene v. United States*, 358 U.S. 326, 329 (1959) and *Johnson v. Mabry*, 602 F.2d 167, 170 (8th Cir. 1979)).

Given *Wampler's* reach, the *Earley* court did not hesitate to extend its holding to DOCCS' addition of post-release imprisonment ("PRS") to an inmate's sentence, even though *Wampler* did not concern PRS at all.  More recently, *Vincent* made clear that the rights recognized in *Earley* were not limited to DOCCS administratively adding PRS.  *See Vincent*, 718 F.3d at 170 (explaining that the *Earley* court "stated [ ] '*New York's Department of*

*Correctional Services has no . . . power to alter a sentence*") (italics in original).  This line of cases sufficiently "defined the contours of the right with reasonable specificity," *Vincent*, 718 F.3d at 169, and gave defendants "fair warning" that their conduct was unconstitutional, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Defendants rely on three cases, *Sudler*, *Francis*, and *Hurd*, to argue that the rights at issue here were not clearly established.  These cases are inapposite.

*Sudler* involved DOCCS' calculation of certain jail time credits that are due when two separate sentences run concurrently.  *See Sudler v. City of New York*, 689 F.3d 159, 172 (2d Cir. 2012).  In *Sudler*, the two concurrent sentences could not run concurrently under state law, and there were no cases instructing DOCCS how to reconcile these competing legal commands. *See id*. at 172-73, 175.  Since there were no instructive cases, the court held that defendants' approach was reasonable and did not violate clearly established law.  *See id*. at 174-75.  This is different from the present allegations, where there are no competing legal commands, only a single sentence issued by a single judge.

*Francis* dealt with a conflict between a state court sentencing order and a New York statute which denied the court the authority to sentence the defendant in the manner it sought to.  *See Francis v. Fiacco*, 942 F.3d 126,

131 (2d Cir. 2019).  Specifically, a state court judge had ordered plaintiff's state sentence to run concurrently with a federal sentence that a judge had not yet issued, but was contrary to state law.  *Id.*  Thus, like in *Sudler*, there were competing legal commands; defendants were "between the rock of the [ ] sentencing order and the hard place of the New York statutory scheme."  *Id.* at 134.  By contrast, the parties in this case do not dispute that the sentencing court had the authority to sentence plaintiff to Shock.

Finally, *Hurd* is unavailing because it did not concern the alteration of a judicial sentence, but rather an official complying with a judicial sentence and miscalculating statutorily mandated credits.  *See Hurd v. Frendenburgh*, 984 F.3d 1075, 1081 (2d Cir. 2021).  The sentencing court in *Hurd* only set the inmate's maximum sentence and did not specify how it was to run.  *Id.* Additionally, the sentencing court did not order DOCCS to grant the inmate credits for jail-time or good behavior.  *Id.*  A DOCCS official ultimately miscalculated the statutorily mandated credits, but DOCCS released the inmate before his maximum sentence term expired.  *Id.*  This differs from the present circumstances, where plaintiff alleges that the sentencing judge's order expressly ordered him into Shock as part of his sentence, and where plaintiff's maximum sentence would only apply if he were ineligible for Shock or could not complete it.

Defendants' citation to *Miller* to suggest that, prior to *Matter of Matzell* (his Article 78 proceeding on this issue), it could be "fairly argued" that Penal Law § 60.04(7) gave DOCCS authority to administratively exclude those judicially ordered to Shock is likewise unconvincing.

*Miller* concerned a different statute than this case, as well as a different program (Comprehensive Alcohol and Substance Abuse Treatment, "CASAT"). *See Matter of Miller v. Fischer*, 67 A.D.3d 1269, 1269 (3d Dept. 2009). CASAT, unlike Shock, has three phases; the first can be court-ordered and not subject to DOCCS discretion, but the second two require approval by DOCCS officials. *Id.* In *Miller*, DOCCS allowed Miller to enroll in the first phase of the program, but denied him entrance into phase two. *Id.* at 1269-70. The court, citing the statute, held that DOCCS did not have authority or discretion to deny admission to phase one of CASAT, but that it could exercise discretion for the second phase. *Id.* at 1270-71.

In this case, Matzell alleges that defendants were aware of the changes brought forth by the DLRA (in fact even issuing an analysis on these changes), *see*, *e.g.*, Compl. ¶¶ 14-17, 46, and yet still knowingly violated the law, *see id.* ¶¶ 118, 124. These allegations, coupled with pre-existing Second Circuit precedent, the DLRA's plain language, and the state court decisions holding that the DLRA required DOCCS to enroll judicially sentenced

inmates in Shock, are sufficient to plausibly allege that defendants' conduct was not objectively legally reasonable in light of clearly established law.

## V. CONCLUSION

Matzell has plausibly alleged that DOCCS' refusal to enroll him in Shock violated clearly established law.  Accordingly, defendants' bid for qualified immunity must be rejected.

Therefore, it is

ORDERED that

Defendants' Dkt. 41 motion for judgment on the pleadings is DENIED.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  October 7, 2021
        Utica, New York.

16